OPINION
{¶ 1} Defendant-appellant James E. Hancock appeals from his conviction and sentence, following a jury trial, for Corrupting Another with Drugs, and for Unlawful Restraint. His appointed counsel has filed a brief pursuant to Anders v. California (1976), 386 U.S. 738, concluding that there are no potentially meritorious issues for review. Hancock has filed his own, pro se brief, in which he essentially argues that his trial counsel was ineffective in his handling of one of the State's witnesses.
 {¶ 2} After performing our duty of independently reviewing the record, we conclude that there are no potential assignments of error having arguable merit, and that this appeal is wholly frivolous. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 3} On Easter Sunday, 2002, Misty Schmitz, who was almost 13 years old, left her home, lying to her mother about her destination. Although she had intended to go to a friend's home in Centerville, she missed the last bus for Centerville, and went north from downtown Dayton, instead. She met up with a male acquaintance, whom she had known about three weeks, at the Parkway Inn, where she remained, in various rooms, the next four days. Schmitz testified that she had smoked marijuana since she was 9 years old, but had not smoked crack cocaine before this incident. While at the Parkway Inn, Schmitz encountered defendant-appellant James E. Hancock and his son, and co-defendant, Jamael Hancock. Crack cocaine was being sold from the room occupied by the Hancocks. Crack cocaine was also being smoked in that room, by various persons. Typically, but not always, the persons in the room desiring to smoke crack cocaine would do so in the bathroom. Schmitz initially smoked crack cocaine with her male acquaintance, and had sexual intercourse with him.
 {¶ 4} Schmitz, and a woman who was also occupying the room for several days, Christina Bledsoe, testified that on numerous subsequent occasions James Hancock, whom they also knew as "Red," provided Schmitz with crack cocaine, putting it in the pipe and lighting it for her.
 {¶ 5} Schmitz testified that at one point she became dissatisfied and left the room. Schmitz testified that Hancock went out, picked her up, put her over his shoulder, and took her back to the room. Schmitz testified that Hancock then "smacked her," more than twice, and told her "I'm your master," and "you will do as I tell you."
 {¶ 6} Schmitz also testified concerning an earlier incident in which she went with Bledsoe to a flea market across the street from the Parkway Inn, and Hancock came over, took her by the wrist, and pulled her back to the hotel.
 {¶ 7} On April 4, 2002, the fourth day of Schmitz's presence at the Parkway Inn, Montgomery County sheriff's deputies received a tip that a minor female might have been abducted or assaulted there, and that crack cocaine usage might be involved. An initial dispatch to the hotel proved fruitless, because no particular room or rooms had been specified, and nothing out of the ordinary was observed. Shortly thereafter, however, the deputies received information concerning a particular room, and they returned to the hotel. Their initial attempts to gain entrance to the room were unsuccessful. Sounds from within the room persuaded the deputies that there was somebody inside, but no one was responding to the deputies. Eventually, a master key obtained from the owner of the hotel permitted the deputies to gain entry to the room. Inside, they found Schmitz, Bledsoe, Brandon Woosley (Bledsoe's boyfriend), and James and Jamael Hancock. The Hancocks were arrested and charged, in the indictment with which this appeal is concerned, with Kidnapping. James Hancock, but not Jamael Hancock, was charged with Corrupting Another with Drugs.
 {¶ 8} Following a jury trial, James Hancock was convicted of Corrupting Another with Drugs, and of the lesser-included offense of Unlawful Restraint. Jamael Hancock was acquitted on both charges. A judgment of conviction was entered against James Hancock, and he was sentenced to six years imprisonment for Corrupting Another with Drugs, and 60 days incarceration for Unlawful Restraint, to be served concurrently. From his conviction and sentence, James Hancock has appealed.
 {¶ 9} Hancock's appointed counsel has filed a brief in accordance with Anders v. California, supra, concluding that there are no potential assignments of error having arguable merit. We then notified Hancock that his attorney had filed an Anders brief, and Hancock has filed his own, pro se brief, essentially alleging that his trial counsel was ineffective in his handling of Christina Bledsoe, who testified for the State.
 II {¶ 10} Pursuant to Anders v. California, supra, we have performed our duty of independent review of the record to see if there are any potential assignments of error having arguable merit. As part of that review, we have reviewed the entire transcript of the trial, as well as the transcript of the sentencing hearing.
 {¶ 11} The Hancocks offered the testimony of James Hancock, Jr., the son of James E. Hancock, and the brother of Jamael Hancock. His testimony contradicted the testimony of the State's witnesses in a number of respects. None of the witnesses who were actually present during the events in question are ideal witnesses. James Hancock, Jr., who testified for the defense, has a record of convictions of Possession of Cocaine and Escape. The most significant witnesses for the State, Bledsoe and Schmitz, have histories of drug use, and were using drugs intermittently during the time that Schmitz was at the Parkway Inn with James Hancock. A jury's determination of the credibility of witnesses is entitled to substantial deference. We conclude that there is nothing arguably inherently incredible in the testimony of Schmitz and Bledsoe, and that their testimony, if believed, would persuade any reasonable juror, beyond reasonable doubt, of James Hancock's guilt of the offenses of which he was convicted. In Hancock's pro se brief, he appears to be arguing that his trial counsel was ineffective in his handling of the witness Christina Bledsoe, who testified for the State. Hancock's trial attorney was Dennis Bailey, a highly experienced criminal defense trial lawyer. Jamael Hancock was also represented at the trial. Both defense counsel cross-examined Bledsoe. Bailey, James Hancock's lawyer, in his cross-examination, concentrated more on bringing out those facts that were helpful to the defense and on limiting the scope of the testimony that was helpful to the State. Jamael Hancock's attorney's cross-examination of Bledsoe, which followed, concentrated more on impeaching Bledsoe's credibility. This appears to us to have been a sound trial strategy. In any event, we conclude that Bailey's cross-examination of Bledsoe, even considered in isolation, cannot remotely be characterized as ineffective.
 {¶ 12} Furthermore, Bailey addressed the issue of Bledsoe's credibility at some length in his closing argument. Excerpts from those portions of Bailey's closing argument addressed to Bledsoe's credibility are worth setting forth:
 {¶ 13} "Per the testimony of Christina [Bledsoe] to a similar effect, that she was in the bathroom. She heard all of the commotion out there but didn't really see what happened.
 {¶ 14} "Now, here's something that's — again, that's — I picked up as a kind of discrepancy in Christina's testimony. Because, if you remember right, during her testimony she says at one point that Antoine is holding the bathroom door shut. Okay. While she and Brandon are in the bathroom smoking crack and while James and Misty are having their dispute. Okay.
 {¶ 15} "And when I'm — when I was questioning — cross-examining her about that and about what she could hear and what she couldn't hear, she then changed it to, well, the bathroom door was open. That's why she could hear all of these words that — clearly that were stated. She says the bathroom door was open. It's just that they were in the bathroom and Misty and James are in the bedroom, but around behind on the other side of the wall separating the bathroom from the bedroom.
 {¶ 16} "Looking at the exhibit, if they're in the bathroom, here and James and Misty over here. You've got this wall in between. Okay.
 {¶ 17} "So she changed her story at that point. That — that the bathroom door isn't closed at all. Okay. So that's a discrepancy in her testimony. You have to — you have to analyze that and deal with that.
 {¶ 18} "* * *
 {¶ 19} "Christina Bledsoe testified that earlier in the day, on the 4th, she and Misty went over to the flea market. And Christina admitted she took $10 from the man that she — from a man she met over there — a guy named Rick — and set Misty up with a time later that day to meet Rick. Now, what was she doing? Well, Christina says, `Well, I was just trying to secure a way to — for Misty to get out of there.' She was trying to help her out. If you believe that, ladies and gentlemen, I can make up some titles to the Salem Avenue bridge back at my office and sell them to you real quick. If you believe that testimony.
 {¶ 20} "She takes that $10 from Rick because she's setting Misty up with a date. She's pimping her out. What does she do with the $10? She goes back to the motel, by her own admission, she buys some crack with it.
 {¶ 21} "MS. STIAKAKIS [representing the State]: Objection, your Honor.
 {¶ 22} "THE COURT: Overruled. The jury can recall what the testimony was.
 {¶ 23} "MR. BAILEY: We've had other testimony that James and Christina have known each other for some period of time and they've had a — some — a clash or a dispute sometime in the past. They've quarreled before. Does that give — suggest to you, ladies and gentlemen, that that — that ongoing dispute that Christina and James have, that in itself is sufficient reason for her to try to pump up her testimony against James, in a way to make him look worse than what it already does. Or worse than what it really was."
 {¶ 24} "* * *
 {¶ 25} "You have Christy — Christina Bledsoe testifying that she saw James provide Misty with drugs — with some crack five or six times, I believe is. If I recall correctly. You can check your own notes. That's her testimony. That's Christina's.
 {¶ 26} "And I think she — later in her testimony, she says something to the effect or testifies that she saw Misty smoking crack some 15 or 18 times during the entire four days they were there. All right.
 {¶ 27} "But again, bear in mind that this is the testimony of Christina Bledsoe who you already know has this ongoing dispute, this clash with James. So that has to weigh into your assessment of that testimony, of all of their testimony."
 {¶ 28} We conclude that Hancock's trial counsel appropriately and effectively challenged Bledsoe's credibility. Based on our review of the entire record, we conclude that any argument that Hancock's trial counsel was ineffective is wholly frivolous.
 {¶ 29} Finally, on the issue of sentencing, the trial court explained, on the record, its reason for imposing a six-year sentence for the more serious offense of Corrupting Another with Drugs. That explanation is worth setting forth in full:
 {¶ 30} "THE COURT: Mr. Hancock, I begin with the fact that you have a substantial criminal record coming to court.
 {¶ 31} "You have seven prior misdemeanor convictions which are the following: 1984 disorderly conduct, 1987, public intoxication, disorderly conduct and another disorderly conduct; in 1994, possession of drug abuse instruments; in 1999, drug paraphernalia and then in 2001, attempted assault. Those are the misdemeanor convictions.
 {¶ 32} "Then, you also have four prior felony convictions, all drug related. August of `94, the felony of drug abuse; March of `96, drug abuse for which you received probation; October `96, aggravated trafficking for which you received one year, and then again, in July `99, trafficking in cocaine for which you received probation.
 {¶ 33} "And so, that's a total of 11 prior convictions. And despite being granted treatment in lieu of conviction, despite being granted probation, despite having been sent to prison, you persist in trafficking in drugs and now, your drug trafficking has escalated to a whole new extremely serious level because what has now happened is you are now convicted of corrupting a juvenile with crack cocaine, a girl who actually at the time was 12 years old shortly just a tad bit before her 13th birthday.
 {¶ 34} "And the jury has also found that in the process, of you also unlawfully restrained her without privilege to do so and so this is very disturbing to the Court, that an approximately 47-year-old man is providing to a 12-year-old, 13-year-old girl crack cocaine.
 {¶ 35} "Misty testified that she told you she was 13 years of age although she was 12 years old and the Court took very detailed notes of the trial, Mr. Hancock. And Misty testified that Red, you, Red gave her crack cocaine and he put it in the stem and melted it down, handed it to Misty and put it in her mouth and Red lit it and he did this five times.
 {¶ 36} "It's not just her testimony. Christina Bledsoe testified that she said toward the end of this event, series of days, she said: Red put a piece of crack on the pipe, he lit it, he held the pipe as Misty inhaled; that she, Bledsoe, saw that you did this a couple of times.
 {¶ 37} "The Court has reviewed the seriousness and recidivism factors. The Court finds that as a more serious factor that the victim in this case, Misty Schmidt [sic], whom the defendant corrupted with drugs, was only 12 years old at the time the defendant being 47 years old or approximately thereabouts. None of the less serious factors are present.
 {¶ 38} "As likely recidivism factors, the Court finds that the defendant, Mr. Hancock, has a history of criminal convictions as the Court has reviewed and that he has not responded favorably to sanctions previously imposed for his criminal convictions.
 {¶ 39} "The Court finds that none of the recidivism not likely factors are present and so, in considering the purposes and principles of sentencing set forth in the Revised Code and also the Court considers the recommendation in this case, and recommendation from the report. Mr. Hancock is, quote: Due to the serious nature of this offense as well as the circumstances involved along with the defendant's lengthy prior felony convictions as an adult and for — most of which are drug related more than a minimum sentence is recommended.
 {¶ 40} "It is the sentence and judgment of the Court on the charge of corrupting another with drugs, the sentences shall be SIX MANDATORY YEARS to the Columbus Reception Center.
 {¶ 41} "The Court suspends the driver's license for a period of one year.
 {¶ 42} "On the charge of unlawful restraint, the sentence will be 60 DAYS to the Montgomery County Jail.
 {¶ 43} "The Court orders those sentences to be run concurrently or at the same time. Credit for time thus far served."
 {¶ 44} The trial court's explanation of its reasons for imposing the six-year sentence is exemplary. Upon this record, any argument that the trial court abused its discretion by imposing that sentence would be wholly frivolous.
 {¶ 45} In conclusion, we find that there are no potential assignments of error having arguable merit, and that this appeal is wholly frivolous. Accordingly, the judgment of the trial court is Affirmed.
GRADY and YOUNG, JJ., concur.